UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| ERINN C. CARL,<br><br>                    Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN, Acting<br>Commissioner of Social Security,<br><br>                    Defendant. | Case No. 3:14-cv-05769-KLS<br><br>ORDER REVERSING AND<br>REMANDING DEFENDANT'S<br>DECISION TO DENY BENEFITS |

Plaintiff has brought this matter for judicial review of defendant's denial of her application for disability insurance and supplemental security income ("SSI") benefits. Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73 and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. After reviewing the parties' briefs and the remaining record, the Court hereby finds that for the reasons set forth below, defendant's decision to deny benefits should be reversed and this matter should be remanded for further administrative proceedings.

FACTUAL AND PROCEDURAL HISTORY

Plaintiff filed an application for disability insurance benefits on May 13, 2011, and an application for SSI benefits on May 23, 2011, alleging in both applications she became disabled beginning March 1, 2009. *See* Dkt. 11, Administrative Record ("AR") 14. Those applications were denied upon initial administrative review on August 3, 2011, and on reconsideration on March 19, 2012. *See id.* A hearing was held before an administrative law judge ("ALJ") on June

ORDER - 1

6, 2013, at which plaintiff, represented by counsel, appeared and testified, as did plaintiff's mother and a vocational expert. *See* AR 33-69.

In a decision dated June 27, 2013, the ALJ determined plaintiff to be not disabled. *See* AR 11-32. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on August 18, 2014, making that decision the final decision of the Commissioner of Social Security (the "Commissioner"). *See* AR 1-7; 20 C.F.R. § 404.981, § 416.1481. On September 30, 2014, plaintiff filed a complaint in this Court seeking judicial review of the Commissioner's final decision. *See* Dkt. 3. The administrative record was filed with the Court on December 19, 2014. *See* Dkt. 11. The parties have completed their briefing, and thus this matter is now ripe for the Court's review.

Plaintiff argues defendant's decision to deny benefits should be reversed and remanded for an award of benefits, or in the alternative for further administrative proceedings, because the ALJ erred: (1) in evaluating the medical evidence in the record; (2) in discounting plaintiff's credibility; (3) in rejecting the lay witness evidence in the record; and (4) in making a residual functioning capacity ("RFC") assessment that was materially different from the hypothetical question to the vocational expert. For the reasons set forth below, the undersigned agrees the ALJ erred in evaluating the medical evidence in the record, in discounting plaintiff's credibility, in rejecting the lay witness evidence, and thus in assessing plaintiff's RFC, and therefore in determining plaintiff to be not disabled.  Also for the reasons set forth below, however, the undersigned recommends that while defendant's decision to deny benefits should be reversed on this basis, this matter should be remanded for further administrative proceedings.

## DISCUSSION

The determination of the Commissioner that a claimant is not disabled must be upheld by

ORDER - 2

the Court, if the "proper legal standards" have been applied by the Commissioner, and the "substantial evidence in the record as a whole supports" that determination. *Hoffman v. Heckler*, 785 F.2d 1423, 1425 (9th Cir. 1986); *see also Batson v. Commissioner of Social Security Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *Carr v. Sullivan*, 772 F.Supp. 522, 525 (E.D. Wash. 1991) ("A decision supported by substantial evidence will, nevertheless, be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.") (citing *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted); *see also Batson*, 359 F.3d at 1193 ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record."). "The substantial evidence test requires that the reviewing court determine" whether the Commissioner's decision is "supported by more than a scintilla of evidence, although less than a preponderance of the evidence is required." *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975). "If the evidence admits of more than one rational interpretation," the Commissioner's decision must be upheld. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984) ("Where there is conflicting evidence sufficient to support either outcome, we must affirm the decision actually made.") (quoting *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971)).[1]

---

[1] As the Ninth Circuit has further explained:

> . . . It is immaterial that the evidence in a case would permit a different conclusion than that which the [Commissioner] reached. If the [Commissioner]'s findings are supported by substantial evidence, the courts are required to accept them. It is the function of the [Commissioner], and not the court's to resolve conflicts in the evidence. While the court may not try the case de novo, neither may it abdicate its traditional function of review. It must scrutinize the record as a whole to determine whether the [Commissioner]'s conclusions are rational. If they are . . . they must be upheld.

*Sorenson*, 514 F.2d at 1119 n.10.

ORDER - 3

I.       The ALJ's Evaluation of the Medical Evidence in the Record

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. *See Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." *Morgan v. Commissioner of the Social Security Admin.*, 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." *Id.* at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." *Reddick*, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* The ALJ also may draw inferences "logically flowing from the evidence." *Sample*, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* at 830-31. However, the ALJ "need not discuss *all* evidence presented" to him or her. *Vincent on Behalf of Vincent v. Heckler*, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation

ORDER - 4

omitted) (emphasis in original).  The ALJ must only explain why "significant probative evidence has been rejected." *Id.*; *see also Cotter v. Harris*, 642 F.2d 700, 706-07 (3rd Cir. 1981); *Garfield v. Schweiker*, 732 F.2d 605, 610 (7th Cir. 1984).

With respect to the medical opinion evidence from examining psychologist Dr. Steven Johansen, Ph.D., the ALJ found as follows:

> In August 2011, examining psychologist, Dr. Johansen, opined the claimant had no more than moderate limitations in cognitive functioning, and marked limitations in social functioning (Ex. 6F). The doctor gave a GAF score of 45. The opinion is given little weight because it is inconsistent with the doctor's clinical findings. Specifically, the doctor found the claimant had a sad and anxious affect and was often tearful, but presented pleasant and cooperative with appropriate eye contact. She performed well on memory and concentration tasks. It appears the doctor relied heavily on the claimant's subjective report of symptoms and limitations, which are not fully credible for the reasons stated throughout this decision. Of note, the doctor did not indicate whether he observed the claimant's reported symptoms (Ex. 6F/2).

AR 24. With respect to the medical opinion evidence from examining psychologist Dr. Michael Brown, Ph.D., the ALJ found as follows:

> In November 2011, examining psychologist, Dr. Brown, opined the claimant had no more than moderate limitations in cognitive functioning, and marked limitations in social functioning (Ex. 10F). The doctor gave a GAF score of 43. The opinion regarding the claimant's social functioning is given little weight because it appears based on the claimant's subjective report of symptoms and limitations, which are not fully credible for the reasons stated throughout this decision. Of note, even if the claimant's symptoms were at the severity she reported, it appears that it was short lived. In January 2012, the claimant denied depression, anxiety, memory loss, and mental disturbance (Ex. 12F/9). Throughout 2012 and 2013, MA Ossanna consistently found she presented cooperative, and generally found her mental status was within normal limits and her condition was stable (Ex. 14F). The opinion regarding the claimant's cognitive functioning is given some weight as it is generally consistent with the doctor's clinical findings.

AR 25. Plaintiff argues these are not legitimate reasons for rejecting these doctors' opinions. The undersigned agrees.

ORDER - 5

First, the ALJ's statement that Dr. Johansen's opinion is inconsistent with his clinical findings from the Mental Status Examination (MSE) is not supported by substantial evidence. According to the Ninth Circuit, "[w]here the purported existence of an inconsistency is squarely contradicted by the record, it may not serve as the basis for the rejection of an examining physician's conclusion." *Nguyen v. Chatter*, 100 F.3d 1462, 1465 (9th Cir. 1996). While the ALJ contrasts plaintiff's reportedly sad, anxious, and tearful affect to her pleasant and cooperative presentation as observed by Dr. Johansen, he fails to recognize that the two are not mutually exclusive and do not alone create an inconsistency. That Dr. Johansen did not find plaintiff to be rude and uncooperative during the examination is not substantial evidence of an inconsistency with his assessment of marked limitations in social functioning during regular employment. Furthermore, the ALJ's explanation that plaintiff "performed well on memory and concentration tasks" is not evidence that the doctor's opinion regarding social functioning is inconsistent because memory and concentration tasks are germane to cognitive functioning rather than social functioning.

Second, the ALJ's statements that both Dr. Johansen's opinion and Dr. Brown's opinion appear to be based on the claimant's subjective reports of symptoms and limitations are not supported by substantial evidence. According to the Ninth Circuit, "[an] ALJ may reject a treating physician's opinion if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (*quoting Morgan*, 169 F.3d at 602 (*citing Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989)). This situation is distinguishable from one in which the doctor provides his own observations in support of his assessments and opinions. *See Ryan v. Comm'r of Soc. Sec. Admin.*, 528 F.3d 1194, 1199-1200 (9th Cir. 2008) ("an ALJ does not provide clear and

ORDER - 6

convincing reasons for rejecting an examining physician's opinion by questioning the credibility of the patient's complaints where the doctor does not discredit those complaints and supports his ultimate opinion with his own observations"); *see also Edlund v. Massanari*, 253 F.3d 1152, 1159 (9th Cir. 2001). According to the Ninth Circuit, "when an opinion is not more heavily based on a patient's self-reports than on clinical observations, there is no evidentiary basis for rejecting the opinion." *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) (*citing Ryan*, 528 F.3d at 1199-1200).

The Court notes that "experienced clinicians attend to detail and subtlety in behavior, such as the affect accompanying thought or ideas, the significance of gesture or mannerism, and the unspoken message of conversation." Paula T. Trzepacz and Robert W. Baker, The Psychiatric Mental Status Examination 3 (Oxford University Press 1993). "The [MSE] allows the organization, completion and communication of these observations." *Id.* "Like the physical examination, the [MSE] is termed the *objective* portion of the patient evaluation." *Id.* at 4 (emphasis in original); *see also Clester v. Apfel*, 70 F.Supp.2d 985, 990 (S.D. Iowa 1999) ("The results of a mental status examination provide the basis for a diagnostic impression of a psychiatric disorder, just as the results of a physical examination provide the basis for the diagnosis of a physical illness or injury.").

Here, Dr. Johansen performed an extensive and thorough MSE, listing a number of results. *See* AR 311-12. The MSE noted that plaintiff's grooming/hygiene was "adequate but mildly disheveled," she had a "distressed/sad facial expression," and she had a "sad, often tearful, anxious" affect. *Id*. Dr. Johansen also reported many of his clinical observations, including that plaintiff had "excessive anxiety and social avoidance" and is "prone to panic

ORDER - 7

attacks."[2] AR 311. Dr. Brown, who reviewed the MSE, also observed that plaintiff "get[s] angry easily," "appeared quite dysphoric at the interview and cried throughout," and "is easy to startle and evidences hypervigilance." AR 314.

Based on a review of the relevant record, the Court concludes that neither Dr. Johansen nor Dr. Brown based an opinion of plaintiff's limitations largely on plaintiff's self-reported symptoms. Rather, both doctors provided a medical source statement that was based on medical records, the doctors' observations, the objective results of the MSE, and plaintiff's self-reported symptoms. Thus, the ALJ's finding that the doctors' assessments appeared to be based largely on plaintiff's self-reported symptoms is not supported by substantial evidence.

The ALJ also failed to address Dr. Brown's opinion that plaintiff is "too depressed to function at this time and would decompensate." AR 316. The Commissioner "may not reject 'significant probative evidence' without explanation." *Flores v. Shalala*, 49 F.3d 562, 570-71 (9th Cir. 1995) (*quoting Vincent*, 739 F.2d at 1395 (*quoting Cotter*, 642 F.2d at 706-07)). The "ALJ's written decision must state reasons for disregarding [such] evidence." *Flores,* 49 F.3d at 571. The ALJ failed to explain why his interpretation of plaintiff's difficulties in maintaining appropriate behavior in a work setting, rather than the doctor's opinion, is correct. *See Reddick*, 157 F.3d at 725 (*citing Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)).

Third, the ALJ's statement that Dr. Brown's opinion should be given little weight because plaintiff later showed improvement is not supported by substantial evidence. According to the Ninth Circuit, "it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable

---

[2] That Dr. Johansen did not indicate on the clinical findings section of his evaluation whether or not he had observed the listed symptoms is not, as defendant argues, substantial evidence that his report was based largely on plaintiff's self-reported symptoms. Dr. Johansen listed his clinical observations on the functional limitations section. AR 310-11.

ORDER - 8

of working." *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014). Specifically, "[t]hat a person who suffers from severe panic attacks, anxiety, and depression makes some improvement does not mean that the person's impairments no longer seriously affect her ability to function in a workplace." *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001). To show that plaintiff's improvement discredit's Dr. Brown's opinion, the ALJ here relies on one pre-surgery evaluation from plaintiff's urologist where mental illness was denied (*see* AR 349) and selected therapy notes that, when read as a whole, in fact lend support to Dr. Brown's assessment of depression and anxiety (*see generally* AR 387-442; *see also* AR 390 ("[Plaintiff] continues to be depressed."); AR 392 ("[Plaintiff] feels constrained to put up appearances not feeling at ease, and this is upping her anxiety."); AR 398 ("[Plaintiff] is finding herself depressed again worrying about how she will survive in the near as well as extended future."); AR 401 ("Mental status: Tearful, somewhat depressed."); AR 408 ("[Plaintiff] continues to perseverate over childhood ills that have affected her over a lifetime.")). These are not substantial evidence to show that Dr. Brown's professional opinion should be disregarded.

Based on the above-stated reasons and a review of the relevant record, the Court concludes that the ALJ's decision to give little weight to the opinions of Dr. Johansen and Dr. Brown is not specific and legitimate and supported by substantial evidence in the record. *See Lester*, 81 F.3d at 830-31 (when an examining physician's opinion is contradicted, that opinion can be rejected "for specific and legitimate reasons that are supported by substantial evidence in the record").[3]

---

[3] Furthermore, with respect to the medical opinion evidence from non-examining physician Dr. Daniel Niems, the ALJ gave little weight to his opinion that plaintiff had marked limitations in social functioning because it was primarily based on the opinions of Drs. Brown and Johansen. AR 25. Because, as discussed above, the ALJ did not give legitimate reasons for rejecting those opinions, he also erred in rejecting the opinion of Dr. Niems solely because it was based on those opinions.

ORDER - 9

"[H]armless error principles apply in the Social Security context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). An error is harmless, however, only if it is non-prejudicial to the claimant or "inconsequential" to the ALJ's "ultimate nondisability determination." *Stout v. Commissioner, Social Security Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *see also Molina*, 674 F.3d at 1115; *Parra v. Astrue*, 481 F.3d 742, 747 (9th Cir. 2007). The determination as to whether an error is harmless requires a "case-specific application of judgment" by the reviewing court, based on an examination of the record made "'without regard to errors' that do not affect the parties' 'substantial rights.'" *Molina*, 674 F.3d at 1118-19 (*quoting Shinseki v. Sanders*, 556 U.S. 396, 407 (2009) (*quoting* 28 U.S.C. § 2111)).

"[T]he fact that the administrative law judge, had she considered the entire record, might have reached the same result does not prove that her failure to consider the evidence was harmless." *Hollingsworth v. Colvin*, 2013 WL 3328609 *4 (W.D. Wash. July 1, 2013) (*quoting Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010). "Had she considered it carefully, she might well have reached a different conclusion." *Id.* Had the ALJ fully credited the opinions of Drs. Johansen and Brown, he may have included additional limitations in the RFC and in the hypothetical questions posed to the vocational expert regarding plaintiff's ability to engage in work activity within an average schedule and work week. The ultimate disability decision may have changed, and thus the error is not harmless.

II.     The ALJ's Assessment of Plaintiff's Credibility

Questions of credibility are solely within the control of the ALJ. *See Sample*, 694 F.2d at 642. The Court should not "second-guess" this credibility determination. *Allen*, 749 F.2d at 580. In addition, the Court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence. *See id.* at 579. That some of the reasons for

ORDER - 10

discrediting a claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long as that determination is supported by substantial evidence. *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001).

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." *Lester*, 81 F.3d at 834 (citation omitted). The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.*; *see also Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." *Lester*, 81 F.2d at 834. The evidence as a whole must support a finding of malingering. *See O'Donnell v. Barnhart*, 318 F.3d 811, 818 (8th Cir. 2003).

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). The ALJ also may consider a claimant's work record and observations of physicians and other third parties regarding the nature, onset, duration, and frequency of symptoms. *See id.*

Here, the ALJ found that plaintiff's allegations were not fully credible for several reasons: her allegations were inconsistent with the medical evidence; her daily activities were not limited to the extent one would expect; she made inconsistent statements about her use of alcohol; and she continued to look for full-time work and also applied for schooling to become a radiology technician. *See* AR 22-24. The undersigned finds that none of these reasons for rejecting the claimant's testimony are clear and convincing.

ORDER - 11

The ALJ's determination that plaintiff's allegations were inconsistent with the medical evidence is not clear and convincing. A determination that a claimant's complaints are "inconsistent with clinical observations" can satisfy the clear and convincing requirement. *Regennitter v. Commissioner of Social Sec. Admin.*, 166 F.3d 1294, 1297 (9th Cir. 1998). However, a claimant's pain testimony may not be rejected "solely because the degree of pain alleged is not supported by objective medical evidence." *Orteza v. Shalala*, 50 F.3d 748, 749-50 (9th Cir. 1995) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991) (*en banc*)); *see also Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001); *Fair*, 885 F.2d at 601. The same is true with respect to a claimant's other subjective complaints. *See Byrnes v. Shalala*, 60 F.3d 639, 641-42 (9th Cir. 1995) (finding that while holding in *Bunnell* was couched in terms of subjective complaints of pain, its reasoning extended to claimant's non-pain complaints as well).

Here, the ALJ stated that plaintiff alleged having severe anxiety and panic attacks, was easily overwhelmed from stress, and had problems gettings along with others, but found these allegations inconsistent with doctors' opinions that she presented as pleasant and cooperative. AR 22. As discussed above, however, the ALJ erred in evaluating the medical opinion evidence in the record. Furthermore, being cooperative at an examination is not necessarily inconsistent with having marked social functioning limitations in the workplace.The ALJ also stated that plaintiff's alleged problems with concentration, focus, and memory were inconsistent with MSEs where she performed well on memory and concentration tasks. *Id*. But the fact that plaintiff alleged problems with memory when she performed well on memory tasks on MSEs is not a valid basis for discrediting all of plaintiff's testimony, particularly regarding social functioning. Even if inconsistency with the medical evidence in the record could be viewed as a valid basis for discounting plaintiff's credibility, the ALJ's other stated reasons for doing so are neither clear

ORDER - 12

<215>nor convincing.

The Ninth Circuit has recognized "two grounds for using daily activities to form the basis of an adverse credibility determination." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). First, such activities can "meet the threshold for transferable work skills." *Id*. Thus, a claimant's credibility may be discounted if he or she "is able to spend a substantial part of his or her day performing household chores or other activities that are transferable to a work setting." *Smolen*, 80 F.3d at 1284 n.7. The claimant, however, need not be "utterly incapacitated" to be eligible for disability benefits, and "many home activities may not be easily transferable to a work environment." *Id*. In addition, the Ninth Circuit has "recognized that disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations." *Reddick*, 157 F.3d at 722. Under the second ground in *Orn*, a claimant's activities of daily living can "contradict his [or her] other testimony." 495 F.3d at 639.

The ALJ in this case lists plaintiff's self-reported activities but does not explain by which basis these activities lead to an adverse credibility determination. *See* AR 23. Regardless, none of the activities listed directly contradict plaintiff's other testimony. Also, the home activities listed – watching shows online, cleaning a house once every other week, going outside alone, driving, shopping once or twice a week, preparing meals three to five times per week – are of the type that are not easily transferable to a work environment and are merely attempts to lead a normal life despite plaintiff's limitations. The record shows that no transferable activities are done for a substantial part of the day or with the frequency that would be expected in a work environment. *See* AR 234-38. The ALJ did not have a clear and convincing reason to discredit plaintiff's credibility because of these activities.

The ALJ's determination that plaintiff made inconsistent statements regarding her history

ORDER - 13

of alcohol abuse also is not clear and convincing. The ALJ notes that the medical record contains one instance of plaintiff denying a history of substance abuse, and notes she once reported that her drinking ended in 2000, but another time said it ended in 1998. *See* AR 23. That plaintiff recalled, more than a decade later, the dates of the last year she drank excessively (which coincided with her leaving a job, not receiving any formal treatment) and those dates varied by two years is hardly clear and convincing evidence that she has a reputation for lying or was purposefully trying to be less than candid. The cited denial of a substance abuse history comes from one sentence in the relevant medical history section of Dr. Johansen's evaluation, which reads, "The claimant denied any substance abuse or criminal histories." AR 308. In several other instances in the record, plaintiff was entirely forthcoming about her substance abuse history. *See* AR 43, 300, 323, 333-34. Regardless, even seen in the worst light against plaintiff, this statement in Dr. Johansen's report alone does not provide substantial evidence for the ALJ to discredit plaintiff's entire testimony.

Lastly, the ALJ's determination that plaintiff's credibility should be discounted because she looked for work and applied for schooling is not clear and convincing. According to the Ninth Circuit, that a claimant "sought employment suggests no more than that he was doing his utmost, in spite of his health, to support himself." *Webb v. Barnhart*, 433 F.3d 683, 688 (9th Cir. 2005). It is not an inconsistency in plaintiff's testimony that she simultaneously claimed to have mental impairments while she hoped to be able to find work in spite of them. Plaintiff testified that she was let go from her most recent job because she was missing at least two days of work a week because of her stress. *See* AR 40. She testified that she got that job because she was able to work from home and thought that would help with her stress, but she was still unable to get out of bed to do that job many days. *See* AR 40-41. Plaintiff then spent two years unsuccessfully

ORDER - 14

looking for work before she became homeless. *See* AR 41. Asked by the ALJ what kind of work she was looking for – full-time or part-time – plaintiff responded, "Anything I could find, yeah." *Id*. Having just outlined how her disability prevented her from holding a full-time job, plaintiff was not clearly indicating she believed she was capable of full-time work if it were available, as the ALJ described. *See* AR 23. Plaintiff should not be punished for trying to find work (or get schooling that would lead to work) to maintain an income and stable housing.

Based on the above-stated reasons and a review of the relevant record, the Court concludes that the ALJ did not have clear and convincing reasons for rejecting plaintiff's testimony. Had the ALJ fully credited plaintiff's testimony, he may have included additional limitations in the RFC and in the hypothetical questions posed to the vocational expert regarding plaintiff's ability to engage in work activity within an average schedule and work week. The ultimate disability decision may have changed, and thus the error is not harmless.

III.     The ALJ's Evaluation of the Lay Witness Evidence in the Record

Lay testimony regarding a claimant's symptoms "is competent evidence that an ALJ must take into account," unless the ALJ "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). In rejecting lay testimony, the ALJ need not cite the specific record as long as "arguably germane reasons" for dismissing the testimony are noted, even though the ALJ does "not clearly link his determination to those reasons," and substantial evidence supports the ALJ's decision. *Id.* at 512. The ALJ also may "draw inferences logically flowing from the evidence." *Sample*, 694 F.2d at 642.

Here, the ALJ gave little weight to the testimony of plaintiff's mother, Karen Peterson, because her statements "essentially repeat the claimant's allegations" and are "inconsistent with

ORDER - 15

the medical evidence." AR 25. However, the ALJ's errors in assessing the medical evidence and the credibility of plaintiff's testimony demand that discrediting Ms. Peterson's testimony was also in error and must be re-evaluated on remand.

IV.     The ALJ's RFC Assessment

If a disability determination "cannot be made on the basis of medical factors alone at step three of the evaluation process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." SSR 96-8p, 1996 WL 374184 *2. A claimant's RFC assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. *Id*. It thus is what the claimant "can still do despite his or her limitations." *Id*.

A claimant's RFC is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. *Id*. However, a claimant's inability to work must result from his or her "physical or mental impairment(s)." *Id*. Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." *Id*. In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." *Id*. at *7.

If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 404.1520(d), (e), § 416.920(d), (e). The ALJ can do this through the testimony of a vocational expert or by reference to the Commissioner's Medical-Vocational Guidelines. *Tackett*, 180 F.3d at 1100-1101; *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2000).

ORDER - 16

An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical posed by the ALJ. *Martinez v. Heckler*, 807 F.2d 771, 774 (9th Cir. 1987); *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984).  The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence. *Embrey*, 849 F.2d at 422.  Accordingly, the ALJ's description of the claimant's disability "must be accurate, detailed, and supported by the medical record." *Id*. (citations omitted).  The ALJ, however, may omit from that description those limitations he or she finds do not exist. *Rollins*, 261 F.3d at 857.

The ALJ in this case presented a hypothetical question to the vocational expert that limited the claimant to work that is low-stress, does not require changes in work setting or processing, and "does not require the exercise of more than routine judgment." AR 64. However, the RFC as written in the ALJ's decision contains the limitation that the work "**not require the exercise of routine judgment**." AR 19 (emphasis in original). Still, at step five of the decision, the ALJ makes clear that he relies on the vocational expert's testimony based on the hypothetical question presented at the hearing, which contained the "does not require the exercise of more than routine judgment" limitation. *See* AR 27. His analysis of plaintiff's skills also indicates that he did not believe plaintiff is incapable of exercising routine judgment. *See* AR 22. Nothing in the record indicates that plaintiff could not exercise routine judgment. Based on examination of the whole record, the discrepancy is inconsequential to the ultimate decision, and the error within the written opinion is harmless error.

However, because the ALJ in this case improperly assessed the medical evidence and plaintiff's credibility, the Court concludes that the ALJ erred in the RFC assessment and therefore in relying on improper testimony to find that plaintiff was not disabled at step five. *See supra*, sections 1, 2. Accordingly, on remand the ALJ must assess plaintiff's RFC anew and must

ORDER - 17

reassess her step five finding based on the new RFC determination.

V.  This Matter Should Be Remanded for Further Administrative Proceedings

The Court may remand this case "either for additional evidence and findings or to award benefits." *Smolen*, 80 F.3d at 1292. Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." *Id.*

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." *Smolen*, 80 F.3d at 1292; *Holohan*, 246 F.3d at 1210. Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen*, 80 F.3d 1273 at 1292; *McCartey v. Massanari*, 298 F.3d 1072, 1076-77 (9th Cir. 2002). Here, the outstanding issue is whether the vocational expert, with a hypothetical that includes all relevant functional limitations, may find an ability to perform other jobs existing in significant numbers in the national economy. Accordingly, remand for further consideration is warranted in this matter.

## CONCLUSION

Based on the foregoing discussion, the Court hereby finds the ALJ improperly concluded plaintiff was not disabled. Accordingly, defendant's decision to deny benefits is REVERSED

ORDER - 18

and this matter is REMANDED for further administrative proceedings in accordance with the findings contained herein.

DATED this 16th day of April, 2015.

Karen L. Strombom
United States Magistrate Judge

ORDER - 19